Morgan County *v.* Seaton.

Filed March 14, 1890.

———————◆———————

No. 13,749.

MORGAN COUNTY *v.* SEATON.

COUNTY.—*Poor Person.*—*Medical Services Rendered to.*— *When not Liable for.*— *County Commissioners.*—A county is not liable to a physician for medical services rendered by him to a poor person, when the physician employed by the board of county commissioners to attend the poor as required by statute refused to act, and when the township trustee declined to employ the plaintiff.

SAME.—*State Benefactions.*—*How to be Administered.*—The benefactions of the State are to be dispensed in pursuance of a carefully devised plan, provided for in the statute, which is to be executed by officers designated by the law, and not according to the individual notion of any citizen as to what humanity may require.

SAME.—*Township Trustee.*—*Overseer of the Poor.*—*Duties of in Respect to Poor Persons.*—*County Commissioners.*—The township trustees are made by statute overseers of the poor within their respective townships. To them as such overseers, the law confides the duty of determining who are poor persons entitled to relief, and their decision can only be reversed by application to the board of county commissioners in the manner provided for in section 6071, R. S. 1881.

SAME.—*Medical Services.*— *When County Commissioners can Allow for.*—*Overseer of the Poor.*—*Power of to Employ Physician.*—Section 5764, R. S. 1881, prohibits the board of county commissioners from allowing any claim of a physician for services, except in pursuance of a contract of employment therein authorized to be made, and the overseer of the poor has power to employ a physician only in the event the board of commis-

[122  521]
[161  152]

sioners fail tó make suitable provision for attendance upon the poor by contract.

OLDS, J., dissents.

From the Morgan Circuit Court.

*L. Ferguson,* for appellant.

*G. A. Adams* and *J. S. Newby,* for appellee.

MITCHELL, C. J.—This is an appeal from a judgment in favor of Dr. Grafton W. Seaton against Morgan county. The judgment is predicated upon a claim for professional services rendered in the treatment of a poor person, residing in Gregg township, in the above county.

It appears from the complaint that a poor person, in the township above named, became seriously ill, and was in urgent need of medicines and medical treatment, which she had no means to procure. The county commissioners had employed a competent physician to attend upon the poor of the township, but it is averred that the physician so employed, when called upon to treat the poor person in question, refused to give her the necessary medicine and attention, or any attention at all, notwithstanding he knew that she was a poor person, dependent upon the township for treatment. Thereupon, the averment in the complaint is, the plaintiff " plaintiff out of humanity and proper regard for her in her said sick and dying condition, called upon the township trustee for said township to interfere in her behalf, and tendered his services to said trustee for her benefit, and offered to treat her under his employment for her benefit." It is averred that although the township trustee was fully aware of the sick and necessitous condition of the poor person, and that she needed immediate attention and care, he refused to extend any aid, and declined to employ the plaintiff, placing his refusal upon the ground that he had no right to employ any one, because of the previous employment by the board of commissioners of another physician, whose duty it was to attend the poor. The plaintiff thereupon, in order

to save the life of the poor person and prevent her from suffering, rendered her medical attention for a period of about three months, for which he demanded and recovered a judgment for one hundred and twenty dollars against the county.

The question is, whether or not, upon the facts stated, the county became liable to pay for the services of the plaintiff, rendered in the manner and under the circumstances detailed.

The argument in support of the judgment is predicated on section 6069, R. S. 1881, in which it is provided that, " Every county shall relieve and support all poor and indigent persons lawfully settled therein, whenever they shall stand in need thereof."

While it is true that it is made the duty of every county in the State to relieve and support the poor and indigent, the method by which support and relief are to be administered is distinctly pointed out by law. In the first place, the township trustees of the several townships are made overseers of the poor within their respective townships. Section 6066, R. S. 1881. The overseer of the poor in each township is specially charged with the oversight and care of all poor persons in his township, and is required to see that they are relieved and taken care of in the manner provided by law. Section 6071. He is required to enter in the poor-book of his township all poor persons who are unable to take care of themselves, and who in his judgment will be entitled to relief, and in case he refuses to enter any person on the poor-book who may be supposed, or who supposes himself, to be entitled to relief, the board of commissioners may, upon application, direct the overseer to receive such person on the poor list. It will thus be seen that the law imposes the duty of determining who are poor persons, entitled to relief, primarily upon the township trustee, acting as overseer of the poor, and provides a particular method by which his judgment may be reversed by application to the county board in case he refuses to recognize a person as poor, who ought to be entered

on his list. It is made the duty of the overseer on complaint made to him that any one not an inhabitant of the township, is sick and in distress, to examine into the case and grant such temporary relief. as the nature of the case may require. *Board, etc.,* v. *Jennings,* 104 Ind. 108. Other sections of the law might be referred to, but it is enough to say that an examination of the statute discloses that the benefactions of the State are to be dispensed in pursuance of a carefully devised plan, which is to be executed by officers designated by the law, and not according to the individual notions of any citizen as to what humanity may require. To the overseer of the poor the law confides the duty of deciding who are poor persons entitled to relief, and his decision can be reversed only in the manner pointed out. According to the provisions of section 5764, R. S. 1881, it is specially made the duty of the board of commissioners " to contract with one or more skillful physicians, having knowledge of surgery, to attend upon all prisoners confined in jail, or paupers in the county asylum, and may also contract with physicians to attend upon the poor generally in the county ; and no claim of a physician or surgeon, for such services, shall be allowed by such board except in pursuance of the terms of such contract: *Provided,* That this section shall not be so construed as to prevent the overseers of the poor, or any one of them, in townships not otherwise provided for, from employing such medical or surgical services as paupers within his or their jurisdiction may require." As will be seen, this section in terms prohibits the board of commissioners from allowing any claim of a physician for services, except in pursuance of a contract of employment, therein authorized to be made, and it has been uniformly held that the overseer of the poor has power to employ a physician only in the event the board of commissioners fail to make suitable provision for attendance upon the poor by contract. *Board, etc.,* v. *Boynton,* 30 Ind. 359 ; *Board, etc.,* v. *Hon,* 87 Ind. 356. In case the physician employed is not accessible,

and an emergency is deemed to exist, or if he refuses for any reason to act, the overseer of the poor may employ a physician, in case of urgent necessity, to treat one in need of medical aid, and in the absence of fraud, the county will be bound by his judgment and liable for the physician's services, even though a physician had been employed by the county. *Board, etc., v. Seaton,* 90 Ind. 158; *Washburn v. Board, etc.,* 104 Ind. 321.

It has been held, and with eminent propriety, that where the overseer of the poor, in the exercise of his discretion, decided that an individual was a poor person, and entitled to relief under the poor laws of the State, and in pursuance of such decision, employed a physician to render medical aid, his judgment was conclusive on the county unless connivance or fraud could be shown. *Commissioners, etc., v. Holman,* 34 Ind. 256; *Board, etc., v. Hon, supra.*

If the county is concluded by the decision of the overseer when he determines that an individual is entitled to relief and employs a physician, it follows, as a necessary corollary, that the physician must also be concluded from recovering from the county, when the overseer refuses or decides not to employ him.

Now, while the complaint abounds in statements that the person to whom medical aid was furnished was a "pauper" and a "poor person," it is nowhere averred that she had been admitted to the list of poor persons, or that the overseer had in any way determined that she was entitled to receive temporary relief. It does, however, distinctly appear that he refused to employ the plaintiff to administer relief. Accepting the statements in the complaint as true, and conceding that the person relieved was a poor person, within the meaning of the law, it may be that the overseer made a mistake in refusing to employ a physician, but that concession still leaves the plaintiff without any right of action against the county, which is maintainable only upon the ground of an express or implied contract of employment, by one hav-

ing competent authority to that end. It can not be that over and above all the various provisions which point out the method for ascertaining and relieving the poor, and supplying them with medical and surgical aid, counties still remain liable to any one who can show that the overseer made a mistake in refusing to employ him, and who proceeded notwithstanding the refusal, from motives of humanity, to relieve a poor person in distress.

·It can not be that it was intended that courts and juries should hold the overseer under surveillance, and determine, at last, who are poor persons, entitled to relief, and whether or not the officers to whom the care, oversight and relief of the unfortunate are committed have decided wisely in each or any particular case. To affirm that it was, is to declare that the statutory system for the relief and care of the poor is no system at all.

The Legislature, upon whom the duty of making provision for the poor and unfortunate is imposed, has adopted what seemed to it adequate means for the discharge of that duty through agencies specially designated for that purpose. Beyond the enforcement of obligations arising, and rights accruing through the agencies appointed, the courts have no supervising control over the subject.

The complaint did not state facts sufficient to constitute a cause of action.

The judgment is therefore reversed, with costs.

OLDS, J., dissents.

Filed March 14, 1890.